**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-3942 and 12-4009
_____

BRIAN STEELE; JUDIKAELLE STEELE,

Appellants in No. 12-3942

v.

ARAMARK CORPORATION;
ARAMARK UNIFORM & CAREER APPAREL, INC.;
QUAD GRAPHICS, INC.; JOHN DOES (1-20)


BRIAN STEELE; JUDIKAELLE STEELE

v.

ARAMARK CORPORATION;
ARAMARK UNIFORM & CAREER APPAREL, INC.;
QUAD GRAPHICS, INC.; JOHN DOES (1-20)

Quad Graphics,

Appellant in No. 12-4009

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.:  1-09-cv-04340)
District Judge:  Honorable Jerome B. Simandle

Argued on July 18, 2013

Before:  RENDELL, SMITH and ROTH, <u>Circuit Judges</u>

Gary D. Ginsberg, Esquire **(Argued)**
Adam M. Raditz, Esquire
Ginsberg & O'Connor
3000 Atrium Way, Suite 100
Mount Laurel, NJ   08054

Daniel B. Zonies, Esquire
1101 Evesham Road, Suite A
Voorhees, NJ   08043

      Counsel for Appellants/Cross-Appellees


Lawrence Berg, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Woodland Falls Corporate Park
Suite 300
Cherry Hill, NJ   08002

David W. Field, Esquire
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ   07068

Eric M. Gemant, Esquire **(Argued)**
McGivney & Kluger
100 Madison Street, Suite 1640
Syracuse, NY   13202

      Counsel for Appellee/Cross-Appellant

## OPINION

**RENDELL**, <u>Circuit Judge</u>:

Plaintiffs husband and wife, Brian and Judikaelle Steele, appeal, among other things, the District Court's entry of summary judgment in favor of Defendant Quad Graphics, Inc. ("Quad"), in their action seeking compensation for injuries that Brian Steele allegedly suffered as a result of exposure to toluene. Quad cross-appeals, arguing that the District Court erred in ruling that the opinion of Plaintiffs' medical expert would be admissible. For the following reasons, we will affirm in part and reverse in part the District Court's orders, and remand for further proceedings consistent with this opinion.

## I.[1]

Brian Steele began working as a substitute driver for Aramark Corp. ("Aramark") in July 2004. Between 2007 and 2009, he occasionally transported "solvent soaked" shop towels from Quad's facilities in West Virginia to Aramark's laundry facilities in New Jersey. He drove this route more regularly—twice a week—from April 1, 2007, until August 31, 2007. During the three-hour trip, the 55-gallon drums containing the shop towels were stored in Steele's delivery truck, which had open airflow between the storage compartment and the cabin. Plaintiffs claim that the lids on the barrels were defective, did not seal properly, and often required tape to keep them closed. As a result, Plaintiffs allege that Brian Steele was exposed to toluene vapors during this transportation.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

In August 2007, Brian Steele was diagnosed with Focal Segmental Glomerulosclerosis ("FSGS"), which developed into end-stage renal disease. He is currently receiving dialysis and is on the kidney-transplant waiting list.

Plaintiffs sued Aramark[2] and Quad in the Superior Court of New Jersey on July 20, 2009, seeking damages for his injuries that were allegedly caused by toluene exposure. In relevant part, Count II of the complaint alleges that Quad "acted negligently in failing to employ reasonable safety measures, and/or to apply industry standard of safety, in protecting plaintiff from exposure to hazardous chemicals endemic to his job." (Compl. at ¶ 13, No. 09-cv-04340 (D.N.J.)). Count IV states a claim for loss of consortium.[3] The action was removed from the Superior Court to the District of New Jersey.

On September 2, 2011, following factual and expert discovery, Quad moved for summary judgment and to bar Plaintiffs' three experts from testifying. Plaintiffs attached to their response the affidavit of Brian Steele, dated July 19, 2011. The allegations contained therein triggered a motion by Quad to strike the affidavit as a sanction for Plaintiffs' failure to supplement their disclosures and interrogatories as required by Federal Rule of Civil Procedure 26.

The District Court granted Quad's motion to strike. It agreed with Quad that the affidavit contained a new and materially different allegation, namely that the drums contained not only "solvent soaked" shop towels, but freestanding liquid toluene as well.

---

[2] The claims against Aramark were dismissed based on the District Court's ruling regarding workers' compensation, which is not raised in this appeal.

[3] Counts I and III are not part of this appeal.

This allegation, the District Court reasoned, was significant because it would allow Plaintiffs to establish negligence per se by demonstrating a violation of the West Virginia Shop Towel Policy, which exempts the transportation of shop towels from hazardous waste regulations as long as no more than one drop remains in the soiled towels (the "One-Drop Rule"). Given the advanced stage of the litigation, the extensive expert discovery that had already been completed, and Plaintiffs' inability to explain their failure to amend their interrogatories, the District Court concluded that striking the affidavit was the "most fitting remedy" for Plaintiffs' delay. (App. A53).

The District Court granted in part and denied in part Quad's motion to strike Plaintiffs' experts. It precluded the testimony of Dr. Bates, an industrial hygienist expert, because it concluded that Dr. Bates' methodology was scientifically unreliable and because his opinion was not grounded in the specific facts of the case. It also struck the opinion of Mr. Pina, an occupational safety expert, because his opinion was not based on the factual record of the case and because it bordered on a legal conclusion. It denied Quad's motion with respect to Plaintiffs' medical expert Dr. Weeden, however. Although it noted that Dr. Weeden failed to rule out hypertension as a cause of Brian Steele's FSGS, the District Court concluded that this shortcoming was a basis for attacking the weight of his opinion, not its admissibility.

Finally, the District Court granted summary judgment in favor of Quad on Plaintiffs' theory that Quad violated the One-Drop Rule. The District Court reasoned that summary judgment was appropriate because Plaintiffs' only evidence to support that theory, the belated July 19, 2011 affidavit, had been stricken. However, the District Court

5

denied Quad's motion as to his claim for negligently exposing Brian Steele to toluene vapors. It concluded that Dr. Weeden's expert opinion was sufficient to raise a genuine issue of material fact as to whether Steele's exposure to toluene caused his injuries, and thus denied summary judgment as to Counts II and IV.

Both Quad and Plaintiffs filed motions for reconsideration. Plaintiffs argued, among other things, that the District Court had erred in entering judgment against them as to their One-Drop theory because it had overlooked the significance of their previous interrogatory answers. The District Court rejected that argument and denied Plaintiffs' motion. But the District Court did reverse course with respect to Plaintiffs' claim of negligence. The District Court concluded that Plaintiffs were required to show evidence of frequent, regular, and proximate exposure to toluene in order to establish medical causation under New Jersey toxic-tort law. Because Plaintiffs' had not done so, the District Court granted Quad's motion to reconsider and entered summary judgment in its favor on Plaintiffs' claims of negligence and loss of consortium.

This timely appeal followed.

## II.

We begin by considering Plaintiffs' contention that the District Court applied the wrong legal standard when it granted Quad's motion for reconsideration and precluded Plaintiffs' negligence claim.

Under New Jersey law, to establish a claim for negligence, a plaintiff must prove: (1) a duty of care; (2) a breach of that duty; (3) proximate causation; and (4) injury. *Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987). It is undisputed that "[i]n a toxic-tort

6

action, in addition to product-defect causation a plaintiff must prove what is known as 'medical causation'—that the plaintiff's injuries were proximately caused by exposure to the defendant's product." *James v. Bessemer Processing Co., Inc.*, 714 A.2d 898, 908 (N.J. 1998). "To prove medical causation, a plaintiff must show 'that the exposure [to each defendant's product] was a substantial factor in causing or exacerbating the disease.'" *Id*. at 908-09 (quoting *Sholtis v. American Cynnamid Co.*, 568 A.2d 1196 (N.J. Super. Ct. App. Div. 1989). The dispute here centers around how a toxic-tort plaintiff may establish medical causation.

The District Court concluded that in order to prove medical causation, a plaintiff must establish "(1) factual proof of the plaintiff's frequent, regular and proximate exposure to a defendant's products; and (2) medical and/or scientific proof of a nexus between the exposure and the plaintiff's condition." *Id*. at 911. This test was first announced by the Appellate Division of the Superior Court of New Jersey in *Sholtis*, and adopted by the Supreme Court of New Jersey in *James*. The District Court concluded that although the second prong of this test (hereinafter the "*Sholtis* test") was satisfied by Dr. Weeden's expert medical testimony, the first prong was not because Brian Steele's exposure to toluene vapors for three-hour periods, twice a week was "not the type of intense exposure" required under New Jersey law. (App. A28).

According to Plaintiffs, it was error to apply the *Sholtis* test.[4] Plaintiffs argue that the unique factual scenarios and attendant causation problems presented by *Sholtis* and *James*, are not present here. We agree.

*Sholtis* involved plaintiffs seeking to recover for injuries caused by over four decades of exposure to many asbestos products that were manufactured by many defendants. 568 A.2d at 1205. Asbestos cases, like *Sholtis*, often involve long disease dormancy periods, long exposure periods, numerous products, and numerous defendants. *Id*. Given all of these complications, establishing that any one defendant was a "substantial factor" in causing or exacerbating an asbestos plaintiff's illness using a traditional causation formulation proved a nearly insurmountable hurdle. In *Sholtis*, this difficulty was further exacerbated by the fact that 90-95% of the plaintiffs' cumulative exposure had been to a single defendant's products. Therefore, the Superior Court adopted an alternative formulation by which plaintiffs could establish medical causation, allowing them to show "an exposure of sufficient frequency, with a regularity of contact, and with the product in close proximity," which was intended to lighten plaintiffs' burden. *Id*. at 1207 (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986)). This test, the Superior Court reasoned, struck "a fair balance between the needs of plaintiffs (recognizing the difficulty of proving contact) and defendants (protecting against liability predicated on guesswork)." *Id*.

---

[4] Plaintiffs and Quad agree that they did not urge the District Court to apply this line of cases, and the District Court did so sua sponte.

In *James*, the New Jersey Supreme Court extended the application of the *Sholtis* test beyond asbestos cases. The plaintiff in *James* had been exposed to a "wide array of residues of petroleum products and other chemical substances, many allegedly containing . . . human carcinogens" during his 26 years of employment. 714 A.2d at 901. Like the Superior Court in *Sholtis*, the Court noted that toxic-tort plaintiffs often face "extraordinary and unique burdens" trying to prove causation. *Id.* at 909 (internal quotation marks omitted). The Court observed that that problem "is further compounded where, as here, a plaintiff has been exposed to multiple products of multiple defendants over an extended period of time." *Id.* The Court, therefore, held that "a plaintiff in an occupational-exposure, toxic-tort case *may* demonstrate medical causation by establishing: (1) factual proof of the plaintiff's frequent, regular and proximate exposure to a defendant's products; and (2) medical and/or scientific proof of a nexus between the exposure and the plaintiff's condition." *Id.* at 911 (emphasis added).

We do not believe that the *Sholtis* test applies to this case. Although this case bears some surface similarity to *Sholtis* and *James* in that it, too, is an occupational toxic-exposure case, the complicated causation problems presented by those cases simply do not exist here. Most obviously, this case does not involve apportioning causation between many defendants who manufactured many different products, all of which contributed in some small way to Brian Steele's disease. Rather, this case involves only a single product and a single source. So if toluene caused Brian Steele's injury there is no difficulty in assigning causation to Quad.

9

Understood another way, *Sholtis* clearly focused on a different aspect of causation than is at issue here. In *Sholtis* it was clear that the plaintiffs' cumulative exposure to asbestos caused their injuries. The question was how, given their complex exposure history, the plaintiffs could prove that their exposure to any given defendant's product was a "substantial factor" in causing their disease. In this case, the question is whether Brian Steele's cumulative exposure to toluene was a substantial factor in causing his injury, not whether Quad's toluene was the cause. For that reason, the *Sholtis* test is inapposite.

Finally, we reject Quad's assertion that *Sholtis* applies across the board in occupational-exposure, toxic-tort cases. None of the cases that Quad cites apply the *Sholtis* test to a single-product, single-defendant case. *See Lewis v. Airco, Inc.*, No. A3509-08T3, 2011 N.J. Super. Unpub. LEXIS 1914 (N.J. Super. Ct. App. Div. July 15, 2011) (unpublished) (claiming workplace exposure to products of many defendants); *Bass v. Air Prods. & Chems.*, No. A-4542-03T3, 2006 N.J. Super. Unpub. LEXIS 2873 (N.J. Super. Ct. App. Div. May 25, 2006) (unpublished) (involving a claim against 97 different manufacturers for exposure to more than 400 different chemicals); *Vassallo v. Am. Coding & Marking Ink Co.,* 784 A.2d 734 (N.J. Super. Ct. App. Div. 2001) (seeking damages where workplace exposure involved more than one product).

On the other hand, in *Webb v. Troy Corp.*, No. A-1944-05T3, 2007 N.J. Super. Unpub. LEXIS 633 (N.J. Super. Ct. App. Div. April 12, 2007) (unpublished), the plaintiff was exposed to a chemical at work on a single occasion while power washing equipment leased from his employer by the defendant, a manufacturer of chemicals. In his suit for

negligence against the manufacturer, the Superior Court explained that "[t]he applicable burden of proof placed upon a plaintiff is to demonstrate exposure to a defendant's product and biological processes from the exposure which result in disease." *Id*. at \*24 (internal quotations and citations omitted). It observed that "[t]he injuries here, unlike asbestos cases, which involve long-term exposure, come from a single exposure." *Id*. Therefore, in such single-exposure cases, "expert opinion regarding 'the dosage of exposure and mode of absorption' is relevant for a jury to consider, *instead of* the 'frequency' or 'regularity' of plaintiff's exposure." *Id*. at \*25 (emphasis added). While we are not bound by this unpublished decision of the Appellate Division of the Superior Court of New Jersey, we are persuaded by it.

In sum, the District Court erred by applying the wrong legal standard. We will reverse the District Court's order granting summary judgment in favor of Quad on Counts II and IV and remand to the District Court for further proceedings on these Counts.

### III.

Plaintiffs' also urge that the District Court erred when it granted summary judgment in favor of Quad on their theory that Quad violated the One-Drop Rule by allowing towels containing more than one drop of liquid to be transported for cleaning.

As an initial matter, Plaintiffs argue that the District Court was incorrect to strike the July 19, 2011 affidavit of Brian Steele, which they allege supports this theory. As described above, the District Court concluded that the affidavit contained the new and materially different allegation that the drums Brian Steele transported contained

11

freestanding liquid toluene which would constitute a violation of the West Virginia Shop Towel Policy, and negligence per se. The District Court struck the affidavit as a sanction for Plaintiffs' failure to amend their interrogatories to include such allegations, as required by Rule 26.

A court may exclude evidence where a party has failed to provide information as required by Rule 26 "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994). Bearing in mind the advanced stage of the litigation, the extensive expert discovery that had already been completed, and Plaintiffs' lack of justification, we see no abuse of discretion in the District Court's choice of sanction here. Like the District Court we will not consider the July 19, 2011 affidavit in evaluating Plaintiffs' One-Drop theory.

The District Court also properly excluded several pieces of evidence that Plaintiffs referred to only in their reply brief in support of their motion for reconsideration. This evidence was not before the District Court on the summary judgment motion and is not a proper basis for granting a motion to reconsider. The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1998). A proper motion under Federal Rule of Civil Procedure 59(e) therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *N.*

12

*River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). None of these apply here.

Ultimately, Plaintiffs' evidentiary support opposing the motion for summary judgment boils down to a single interrogatory answer describing the towels as solvent "soaked." Given the evidence that toluene evaporates rapidly, the mere allegation that the towels were at one point "soaked" is not enough to raise a material dispute of fact as to whether the towels contained more than a single drop of solvent. We will affirm the District Court's grant of summary judgment in favor of Quad as to Plaintiffs' One-Drop theory.

IV.

Finally, both parties object to the District Court's orders respecting Plaintiffs' expert witnesses. For their part, Plaintiffs argue that it was error to exclude the opinions of Dr. Bates, an industrial hygienist expert, and Mr. Pina, an occupational safety expert, for lack of good grounds and a proper factual basis. Quad, on the other hand, urges error in the District Court's decision to permit the testimony of Plaintiffs' medical expert, Dr. Weeden, whom it argues did not perform a sufficiently reliable differential diagnosis.

We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997). Having carefully considered the appellate briefs of the parties, the parties' oral argument, and the record, including the memoranda of the District Court, we see no need to expand upon the District Court's opinions with respect to the expert testimony. The District Court's analysis was fulsome and well reasoned. Accordingly, for substantially the same reasons

13

set forth by the District Court, we will affirm the District Court's rulings as to Dr. Bates, Mr. Pina, and Dr. Weeden.

V.

For the reasons described above, we will affirm in part and reverse in part the District Court and remand for further proceedings consistent with this opinion.